UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TERESA WHISSON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CENTRAL STATES SOUTHEAST | ) | Case No. 12-cv-1599 |
| AND SOUTHWEST AREAS PENSION | ) | |
| FUND, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Teresa Whisson, filed a Complaint against Defendant, Central States Southeast and Southwest Areas Pension Fund ("Central States"), on March 5, 2012, asserting Central States violated Section 502(a) of the Employee Retirement Income Security Act ("ERISA), 29 U.S.C. § 1132. The Complaint was amended on April 26, 2012. The parties filed cross-motions for summary judgment, which have been fully briefed. Whisson asserts she is entitled to summary judgment on her claim and that the decision by the Central States's Trustees Appellate Review Committee ("TARC") to deny her pension claim should be overturned. Central States contends that no genuine issues of material facts remain and that Central States is entitled to judgment as a matter of law.

**BACKGROUND**

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue . . . ." Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny each factual statement proffered by the moving party and concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A

litigant's failure to dispute the facts set forth in an opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Local Rule 56.1(b)(3)(C) further permits the non-movant to submit additional statements of material facts that "require the denial of summary judgment . . . ."

To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

The following facts[1] are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.[2] Whisson is a resident of Homer Glen, Illinois,

---

[1] Admitted Statements of Material Facts by Defendant are designated as "Def.'s SOF," with the corresponding paragraph referenced; Plaintiff's Additional Admitted Statements of Material Facts are designated as "Pl.'s SOF," with the corresponding paragraph referenced.

and Central States has its principal place of business in Rosemont, Illinois. (Pl.'s SOF ¶¶ 3-4.) Jurisdiction exists pursuant to 28 U.S.C. § 1132(e), and venue is proper in this district as the acts alleged in the Complaint occurred within this district. (Pl.'s SOF ¶¶ 5-6.)

Whisson was employed by Central States Pension and Health and Welfare Funds from September 7, 1977 to March 25, 2009. (Def.'s SOF ¶ 1.) In March 2009, Whisson received an email offering her the opportunity to participate in a voluntary reduction program; Whisson executed a Waiver and Release Agreement, which provided Whisson, if eligible, could "retire after receiving the last of your severance payments." (Pl.'s SOF ¶¶ 9-10.) Whisson stopped receiving severance payments in July 2010. (Pl.'s Add'l. SOF ¶ 1.) However, over the course of her employment, Whisson earned credit under the Central States Pension Plan, entitling her to a pension of $3,125.03 per month for life upon her retirement. (Def.'s SOF ¶ 1.) Whisson's pension was suspended because Central States determined she was engaged in Restricted Reemployment at Vitech System Group ("Vitech") since April 20, 2009. (*Id.*)

---

[2] Many of the facts Whisson seeks to include in this record go beyond the scope of the administrative record. However, "[i]n reviewing the denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B), the court is generally limited to consideration of the administrative record," though "[e]vidence beyond the record may be considered concerning a conflict of interest, misconduct, or bias on the part of the decisionmaker." *Finlay v. Beam Global Spirits & Wine, Inc.*, 872 F. Supp. 2d 730, 734 (N.D. Ill. 2012) (citations omitted). Accordingly, much of the outside evidence Whisson presented is excluded for purposes of this review, as it did not demonstrate bias or misconduct. A plan administrator's decision is not questioned without "a *prima facie* showing of some misconduct or conflict of interest." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Moreover, even if these facts outside the scope of the administrative record were considered, Whisson remains unable to demonstrate that Defendant's decision was arbitrary or capricious. As Defendant points out, the mere fact that the Trustees and Defendant's staff do not have detailed recollections of what transpired during consideration of Whisson's appeal is insufficient to support a showing of misconduct or bias. (Def.'s Resp. at 12.)

*The Plan and Benefits*

The Pension Fund is a Taft-Harley Trust administered by an equal number of employer and employee trustees. (Def.'s SOF ¶ 2.) Employer trustees are officers of employer associations in the Teamster Industry; employee trustees are officials of Teamster unions. (*Id.*) The Pension Fund is a multiemployer employee pension benefit plan, as defined by Section 3(2)(A) of ERISA; it provides retirement benefits to qualifying employees who reach the age and service requirements stated in the Pension Plan. (Def.'s SOF ¶¶ 3, 8.) The Pension Fund is a non-profit Illinois trust, and payments from the trust to anyone that are not allowed by the Pension Plan terms reduce the amount of assets available to pay allowed benefits. (Def.'s SOF ¶¶ 4-5, 7.) The Pension Fund operates to protect the assets of the trust for Fund participants and beneficiaries; it is not an insurance company and earns no profits. (Def.'s SOF ¶ 6.)

The Central States Pension Fund Trust Agreement ("Trust Agreement") grants the Trustees the discretionary power and authority to administer the trust in the interests of participants and beneficiaries, including the authority to decide claims for benefits and construe the terms of the Pension Plan. (Def.'s SOF ¶ 10.) The Trustees have the power to operate and administer the trust in accordance with applicable law; they have the power to formulate any rules they deem necessary to properly administer the trust. (Def.'s SOF ¶¶ 11-12.) The Trust Agreement further provides that the Trustees have the authority to construe the provisions of the Trust Agreement and "any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers." (Def.'s SOF ¶ 13.) The Trustees also have the power to resolve controversies, "and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefits hereunder." (Def.'s SOF ¶ 14.) Under the Trust Agreement, the Trustees must use and apply the fund to pay

4

benefits to eligible employees "in accordance with terms, provisions and conditions of the Pension Plan . . . ." (Def.'s SOF ¶ 16.)

The 2010 Pension Plan Document ("Plan Document") contains rules regarding qualifications for the various pension benefits offered by Central States, including restrictions regarding reemployment after retirement. (Def.'s SOF ¶¶ 17-18.) The Plan Document defines the term "Restricted Reemployment," which is applicable to all retired participants. (Def.'s SOF ¶ 19.) The Plan Document provides, in pertinent part, "The Pension Fund shall permanently suspend all Periodic Benefit Payments of a Pensioner or Disabled Participant during periods of his Reemployment to the following extent . . . all Periodic Benefits to a Pensioner shall be permanently suspended during all periods of his Restricted Reemployment . . . ." (Def.'s SOF ¶ 20.) The Plan Document further defines reemployment as:

> any employment, self-employment, occupation or service of any kind and at any time which is a basis for any form of past, present or future wages, salary, commissions, profit or other income (including employment in a managerial or supervisory position, and including any occupation or service in which there is no employer-employee relationship.

(Def.'s SOF ¶ 21.) "Restricted Reemployment means and includes . . . reemployment in any position in the same job classification as any other Participant then employed by a Contributing Employer located within 100 miles of the position." (Def.'s SOF ¶ 22.) A job classification is defined as "an arrangement of different types of employment within a company or industry, according to the skill, experience or training required." (Def.'s SOF ¶ 51.)

*Application for Pension Benefits*

Whisson applied for her pension on May 11, 2010, naming a retirement date of August 1, 2010. (Def.'s SOF ¶ 25.) Her application indicated she was employed since April 20, 2009, as a full-time Solutions Manager by Vitech, which was engaged in the business of Information

5

Technology. (Def.'s SOF ¶ 25.) Whisson's application stated that she intended to work beyond her retirement date as a Solutions Manager with Vitech. (Def.'s SOF ¶ 30.)

Central States reviewed Whisson's application, determined that her employment at Vitech was considered Restricted Reemployment under the Plan, and rejected her request for her pension benefit while she was employed at Vitech. (Def.'s SOF ¶ 26.) John Young, who was involved in the review of Whisson's application at Central States, did not speak to Whisson about her job responsibilities at Vitech. (Pl.'s Add'l. SOF ¶ 7.) Young did not know what type of training Whisson received at Vitech. (Pl.'s Add'l. SOF ¶ 9.)

> Whisson listed her responsibilities as a Solutions Manager for Vitech as:
>
> Develop expertise in Vitech's V3 product, V3's target market business requirements, Vitech methodologies and Vitech's service offerings
>
> Participate in and/or lead specific V3 client engagements including Launch Phase Activities, solutions design, solutions implementation, solutions deployment, testing, training, and project management
>
> Understand, monitor, and manage client-goals, contract terms, project budgets, project staffing, project issues, and project scope across client base
>
> Ensure compliance with strong delivery practice, including status calls, work lists, status memos, specifications, timelines, etc.
>
> Identify and nurture "up sell" opportunities within the client base
>
> Maintain contact with the client base as a senior Vitech representative and escalation point ensuring that neither Vitech nor the client is 'surprised' by project situations
>
> Participate in various V3 business development initiatives including pre-sales demonstrations, pre-sales solutions design, gap analysis, project estimating, proposal development, and prospect management
>
> Act as an escalation point for client and staff within Vitech's organization
>
> Weekly travel will be required
>
> Other duties as assigned.

(Def.'s SOF ¶ 31.)

On June 14, 2010, Central States advised Whisson that her work at Vitech was considered Restricted Reemployment because her work was in the same industry in which she had previously earned Contributory Credit and was the same type of work performed by other participants within 100 miles. (Def.'s SOF ¶ 32.)

*Appeals Process*

Whisson appealed this adverse determination through the Central States administrative appeals procedure; her final appeal was denied by the Trustees on April 12, 2011. (Def.'s SOF ¶ 27.)

The Pension Plan establishes a two-step appeals process for a claimant wishing to appeal an adverse determination made by the Fund; during the appeals process, a claimant may submit written documents, comments, records, and other information relating to the claim of benefits. (Def.'s SOF ¶ 23.) "The burden of proof in demonstrating any fact essential to the approval of any claim for benefits, including eligibility for any claimed benefit and the extent to which a claimed benefit is covered and payable in accordance with this Pension Plan . . ." is on the claimant. (*Id.*)

The administrative record of Whisson's appeal is contained in the Minutes of the Pension TARC of April 12, 2011. (Def.'s SOF ¶ 28.) The administrative record contains the basis for the Trustees' decision to deny Whisson her pension benefits because of her Restricted Reemployment. (Def.'s SOF ¶ 29.)

<u>Appeal to the Benefits Claim Appeals Committee</u>

Whisson appealed the denial of her benefits to the Benefits Claim Appeals Committee's decision on September 15, 2010, asserting that Vitech is in the Computer Software and IT

7

Consulting Industry, while Central States (her former employer) was in the Employee Benefit Administration Industry. (Def.'s SOF ¶ 33; Pl.'s SOF ¶ 31.) John Young was a member of the Benefit Claim Appeals Committee. (Pl.'s SOF ¶ 32.) In her appeal, Whisson further contended it was clear that her Vitech job description and her Central States job description had very little in common. (Def.'s SOF ¶ 34.) Whisson explained her role at Central States in her appeal as follows:

> At Central States, I administered the system that tracks member work history, employer obligations and contributions, [and] member [health and pension] eligibility. I worked with the users to educate them in the function of the system as it related to the performance of their duties. I utilized the system to generate billing documents, correspondence and reports. As part of my duties at Central States, **I served as the client contact person for Vitech regarding system functionality and any necessary changes or upgrades**.

(Def.'s SOF ¶ 35) (emphasis added). She then explained her duties at Vitech, stating:

> At Vitech, my duties fall more in the role of consultant. These duties include meeting with clients (and potential clients), demonstrating our systems, participating in solution design and sales proposals and solutions implementation. I am servicing persons who held positions similar to mine at [Central States]. I work from my home and service several clients. The execution of my responsibilities is not directly supervised.
>
> In summary, the focus of my position at Central States was on utilization of the system for a single end user, while the focus of my position with Vitech is on sales and business development for multiple clients. The similarity is restricted to the vendor and their system, not the work. There is no one receiving pension credit from Central States that is performing the duties of my current position.

(Def.'s SOF ¶¶ 36-37.)

The Appeals Committee denied Whisson's appeal on September 23, 2010, explaining to Whisson in a letter dated September 24, 2010, that her claim was denied because her reemployment as Solutions Manager with Vitech was Restricted Reemployment. (Def.'s SOF ¶¶ 38-39.)

## Appeal to the TARC

On March 15, 2011, Whisson appealed to the TARC. (Def.'s SOF ¶ 40.) Whisson explained that her last position at Central States was Project Manager in Operations Accounting; in this role, she worked with staff in day-to-day responsibilities, including billing and collecting employer contributions, tracking member history, and billing and collecting withdrawal liability. (Def.'s SOF ¶ 41.) Whisson stated that at Central States, she was exclusively an end-user of the Vitech V3 system, as well as other unrelated applications. (*Id.*) Whisson described her role at Vitech now as being on "the other side of the fence" – that she used to act as a liason between Central States and Vitech for system issues and that, now, she works with the end-user to identify client needs and advise on Vitech's services to help meet those needs. (*Id.*) At Vitech, Whisson developed expertise in marketing business requirements and methodology, identifying 'up sell' opportunities for Vitech with its clients. (Def.'s SOF ¶ 42.) Whisson contended that the similarity between her previous and current positions ends with the fact that Vitech provides an application used by Central States; she asserts that her responsibilities at Vitech do not resemble her work at Central States. (Def.'s SOF ¶ 43.)

In support of her appeal, Whisson submitted a letter from the Senior HR Manager of Vitech, who stated Whisson is employed as a Consultant responsible for systems analysis, design, and providing application support for several clients. (Def.'s SOF ¶ 44.) The statement of a current Central States employee, Mark Schneider, was also part of the administrative record; Schneider is employed as a Division Manager in Operations Accounting for Central States and has become familiar with the Vitech V3 system. (Def.'s SOF ¶ 45.)

Schneider's statement was prepared by James Condon, the Deputy Chief Legal Officer and Secretary to the Board of Trustees. (Pl.'S Add'l. SOF ¶ 31.) This was the only appeals case

where Condon prepared a statement to be part of the TARC record. (Pl.'s SOF ¶ 41.) Schneider's statement provided that Central States uses Vitech's V3 system as the primary tool for tracking: (1) contributions paid by employers, (2) work history and eligibility of Participants, and (3) information relevant to the calculation of employer withdrawal liability. (Def.'s SOF ¶ 46.) Schneider identified the Vitech V3 system as the most important and most commonly used tool to carry out those functions at Central States. (Def.'s SOF ¶ 47.) Schneider described his job functions, noting that his job is especially dependent on his knowledge and skills relating to the V3 system:

> I have functioned not only as an end-user of the V3 system, but also as a person with responsibility for (i) identifying [Central States's] needs to be met by the V3 system and any system upgrades or modifications required to meet those needs; (ii) providing training and support to hundreds of V3 system users at the Funds with regard to the design and operation of that system and (iii) conducting V3 system testing. My predecessor as the Funds' liaison to Vitech was Teresa Whisson.

(Def.'s SOF ¶ 48.) In this role, Schneider's primary contact at Vitech is Shih-Chi Chou, a Vitech Solutions Analyst, who provided Schneider with instructions on how to use the V3 system; Schneider then provided instructions to the V3 users at Central States. (Def.'s SOF ¶ 49.) Schneider stated that Central States uses the "Classic" V3 Benefit Administration product, though there is also a web-based V3 product. (Def.'s SOF ¶ 50.) According to Schneider, Chou is familiar with both the classic and web-based V3 products, and discusses both of them with Schneider. (*Id.*)

Condon prepared a summary and statements to be used at the TARC review of Whisson's appeal. (Pl.'s Add'l. SOF ¶ 23.) Condon did not contact Whisson to prepare for the review. (Pl.'s Add'l. SOF ¶ 26.)

The TARC unanimously denied Whisson's administrative appeal on April 12, 2011.

(Def.'s SOF ¶ 53.) The decision provided:

> After a full discussion, a motion was made, seconded and unanimously carried to determine that the above-described employment of Teresa E. Whisson by Vitech Systems Group, Inc. Is Restricted Reemployment in the same job classification as another Participant employed by a Contributing Employer at a local within 100 miles of Ms. Whisson's position, and that her retirement pension payments are to be suspended for all periods of such Reemployment unless and until her specific employment position or her employer is changed. The Committee made this determination on the basis of all the facts and circumstances appearing in the record (including the 4/11/2011 Statement of Mark Schneider and material from the Vitech Systems Group, Inc. Web site), and on the basis of the following findings by the Committee:
>
> 1. A primary consideration in determining whether two jobs are within the same job classification or type is whether the jobs entail the same skills. See, e.g., Dictionary.com (defining 'job classification' as 'an arrangement of types of employment within a company or industry according to skill, experience or training required') (emphasis added) (available at - http://dictionary.reference.com/browser/job+classification). Cf. Aune v. Administrator of Wage and Hour Division, U.S. Dept. Of Labor, 2011 WL 1135917, *5 (D.S.D. 2011) (noting that under wage and hour regulations, 'job classifications are based on the skill required and the duties performed') (citation omitted.)
>
> 2. The first item listed in the Vitech Systems Group, Inc. ('Vitech') 'Position Description' relating to Ms. Whisson's job as a Solutions Manager (submitted in support of Ms. Whisson's claim) is to '[d]evelop expertise in Vitech's V3 product...'
>
> 3. As indicated in the April 11, 2011 Statement of Mark Schneider (an employee at the Funds' Rosemont, Illinois offices who succeeded Ms. Whisson's job responsibilities at the Central States Funds with respect to serving as liaison to Vitech concerning the V3 system, and the provision of testing, support and training to the Funds related to that system), Mr. Schneider's job classification at the Funds is also highly dependent on skill and knowledge concerning the Vitech V3 system. (Schneider Statement, Para. 5.)
>
> 4. In addition, the Vitech 'Position Description' relating to Ms. Whisson's job as a Solutions Manager lists V3 system 'testing' and end-user 'training' high among Ms. Whisson's current job functions. As Mr. Schneider's Statement indicates, these functions also figure heavily in his current job classification at the Funds. (Schneider Statement, Para. 5.)

5. In addition, Ms. Whisson's March 10, 2011 Affidavit (Para. 5) and the March 8, 2011 letter from David Tonkin at Vitech indicate that Ms. Whisson's primary functions as Vitech Solutions Manager include the identification of end-user needs with respect to the V3 system, and the provision of V3 system support. Mark Schneider's Statement also indicates that a significant part of his job function at the Funds is to identify the Funds' needs to be met by the V3 system and to provide support for that system. (See Schneider Statement, Para. 5.)

6. Although Ms. Whisson's 3/10/2011 Affidavit states that the V3 system was only one of several systems used to carry out her responsibilities at the Funds with respect to billing and collection issues and tracking member history (Whisson Aff. Paras. 2-3), Mr. Schneider's Statement indicates (in Para. 4) that the V3 system is 'by far the most important and commonly used' by Mr. Schneider and others at the Funds to carry out these functions.

7. While Ms. Whisson's Affidavit asserts (in Para. 7) that she currently promotes a V3 product in a 'totally different application' (browser application versus the classic application used by the Funds), Mr. Schneider's Statement (Para. 7) indicates that the two configurations of the V3 system have the same basic functions, and that Vitech client representatives (Solution Managers or Solution Analysts) are familiar with both V3 applications or configurations.

8. Ms. Whisson's Vitech job as a Vitech Solutions Manager involves some travel, but that work is based in her home in Homer Glen, Illinois.

9. Due to a significant overlap with regard to both job skills and job functions, Ms. Whisson's present employment with Vitech is within the same job classification or type as Mark Schneider – an employee of the Funds at the Funds' Rosemont, Illinois office, and thus a Participant of the Pension Fund employed by a Contributing Employer within 100 miles of Ms. Whisson's position with Vitech. Nelson Aff., Exhibit C, p. 6.

(Def.'s SOF ¶ 53.) Central States wrote to Whisson on April 20, 2011, to advise Whisson of its decision to deny her appeal. (Def.'s SOF ¶¶ 54-55.)

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the

evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court views the evidence in a light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

"Where, as here, the plan grants the administrator the discretion to determine eligibility and construe the plan terms, we review the administrator's decision under an arbitrary and capricious standard. Under this standard, 'an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language.'" *Weitzenkamp v. Unum Life Ins. Co. of America*, 661 F.3d 323, 329 (7th Cir 2011) (quoting *Wetzler v. Ill. CPA Society and Foundation Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009)). Determinations made by an administrative board are set aside by a court only when

they are "unreasonable, and not merely incorrect . . . ." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 329 (7th Cir. 2000).

## ANALYSIS

The decision by Central States to deny Whisson's benefits is within the Fund's discretion, as Central States is authorized to make such benefit determinations. The question to consider here is whether or not Central States's denial of Whisson's benefits was arbitrary or capricious – and such a determination is overturned "only if it is downright unreasonable." *Herman v. Central States, Southeast and Southwest Areas Pension Fund*, 423 F.3d 684, 692 (7th Cir. 2005) (quotations and citations omitted).

Central States argues in its motion for summary judgment that its decision to deny Whisson's benefits because of her Restricted Reemployment was a reasonable determination. Whisson contends Central States's decision was arbitrary and capricious.

In particular, Whisson contends in her motion she is entitled to summary judgment because ". . . there is an absence of reasoning to support Central States' determination that Whisson's job at Vitech was the "same" as the job that Mr. Schneider was performing at Central States . . . ." (Pl.'s Mem. in Support of Mot. at 8.) The determination by Central States regarding Whisson's reemployment hinged on whether or not she was employed in a position with the *same job classification* as any other participant in the Central Funds plan was then employed by a contributing employer located within 100 miles of the position. The TARC, relying on an online dictionary, defined job classification as "an arrangement of types of employment within a company or industry according to skill, experience or training required." (Def.'s SOF ¶ 51.)

Central States did not, contrary to Whisson's position, determine that Whisson, in her role at Vitech, and her replacement at Central States Pension and Health and Welfare Funds held the same *job*, but rather, concluded that Whisson and Schneider held the same job *classification*. Central States did not need to determine that Whisson's job at Vitech to Schneider's job was *identical* to find that Whisson engaged in Restricted Reemployment. Whisson's job simply needed to be within the same job classification as Schneider's job; that is, their jobs had to be found to be within the same industry, according to the same skills, experience, or training required. Central States carefully considered Whisson's own description of her job at Vitech, as well as Schneider's job description, and found that a significant overlap existed with regard to both job skills and job functions.

Both Whisson and Schneider utilize Vitech's V3 system to perform their job functions. Whisson sought to distinguish her new job from Schneider's by arguing that her work with the V3 system involves sales and business development for multiple clients, which differed from Schneider's job, which involved administering the V3 system at Central States to track employee history, employer obligations, and benefit eligibility. However, as the administrative record demonstrates, Schneider and Whisson share many of the same job functions, including testing the V3 system and training end users.

After considering the information submitted by Whisson and also obtained from Schneider, it was reasonable for Central States to conclude that Whisson was engaged in Restricted Reemployment. Whisson seeks to introduce evidence beyond the administrative record, arguing, for example, that Schneider did not prepare his report by himself, or that Whisson was not interviewed or contacted to obtain additional information about her training and skills. Even if this evidence were fully considered, it would not support Whisson's assertion

15

that some sort of conflict of interest or misconduct existed on the part of Central States. "[T]he plan administrator's motivations should not be questioned absent a *prima facie* showing of some misconduct or conflict of interest." *Barrett v. Life Ins. Co. of North America*, Case No. 11 C 6000, 2012 WL 3544839, at *4 (N.D. Ill. Aug. 12, 2012) (quoting *Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 814 (7th Cir. 2006)). Whisson fails to make even a *prima facie* showing that Central States was biased or improper in its decision making process and, therefore, none of this evidence beyond the scope of the administrative record requires consideration. Accordingly, Whisson is unable to demonstrate that the decision by Central States to deny her benefits due to her Restricted Reemployment was arbitrary and capricious. Central States has demonstrated that it is entitled to judgment as a matter of law that its determination to deny Whisson's benefits was reasonable and did not violate Section 502(a) of ERISA.

## CONCLUSION

Based on the foregoing analysis, Central States's motion for summary judgment is granted, and Whisson's motion for summary judgment is denied. Judgment is entered in favor of Central States, and Whisson's claim is dismissed.

Date: June 25, 2013

JOHN W. DARRAH
United States District Court Judge